**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **TERRIE GAMMON and CYNTHIA WILSON on behalf of themselves and others similarly situated**, | : <br> : <br> : <br> : |
| Plaintiffs, | :    CASE NO: 2:19-cv-05140-JLG-EPD <br> : |
| v. | :    Judge James L. Graham <br> : |
| **MARIETTA OPCO, LLC D/B/A ARBORS AT MARIETTA** | :    Magistrate Judge Elizabeth Preston Deavers <br> : |
| Defendant. | : <br> : <br> : |

**JOINT MOTION FOR ORDER AND JUDGMENT ENTRY APPROVING SETTLEMENT OF COLLECTIVE ACTION AND DISMISSING ACTION WITH PREJUDICE**

Plaintiffs Terrie Gammon and Cynthia Wilson ("Plaintiffs" or "Named Plaintiffs") on behalf of themselves and others similarly situated, and Defendant Marietta OPCO, LLC d/b/a Arbors at Marietta ("Defendant"), and (hereinafter collectively the "Parties"), by and through counsel, move this Court for an Order approving their Settlement Agreement relating to claims under the Fair Labor Standards Act ("FLSA") and Ohio law.

As set more fully herein, the Parties' settlement discussions were facilitated by skilled mediator, Frank A. Ray. Moreover, the discussions were informed by a detailed damages analysis conducted by an economist, and a compound risk analysis prepared by Plaintiffs' counsel. The Parties agree that the terms of the Settlement represent a fair, adequate and reasonable compromise of the claims at issue. The Settlement Agreement, Notice of Settlement and Consent to Join and Claim Form are attached hereto as composite **Exhibit A**. A proposed Order and Judgment Entry Approving Settlement of Collective Action and Dismissing Action

1

with Prejudice is attached hereto as **Exhibit B**. The Declaration of Christopher J. Lalak is attached hereto as **Exhibit C**.

## FACTUAL AND PROCEDURAL BACKGROUND.

Plaintiffs filed their Complaint on November 22, 2019, alleging that Defendant violated the Fair Labor Standards Act and the Ohio's overtime statute by failing to pay Plaintiffs and other similarly situated employees for all overtime hours worked. (See ECF No. 1). Specifically, Plaintiffs alleged that, pursuant to a companywide policy, Defendant automatically deducted 30-minute lunches from each shift worked. (*Id.*). Plaintiffs further alleged that they and those similarly situated were routinely not permitted to take a 30-minute lunch breaks as scheduled as a result of Defendant's operational needs. (*Id.*).

Although Defendant had the ability to counteract the automatic deduction when an employees' lunch break was skipped or interrupted, Plaintiffs alleged that Defendant refused to honor "missed lunch" forms. (*Id.*). To this end, Plaintiffs' allege that Defendant had a company-wide practice of continuing to enforce automatic deductions even when Defendant was aware that such deductions should not have been taken. (*Id.*). Thus, Plaintiffs alleged that because they were not paid for all hours worked Defendant regularly failed to pay them overtime for hours worked in excess of 40 per workweek. (ECF No. 1). On December 23, 2019, Defendant filed its Answer to Plaintiffs' Complaint, denying Plaintiffs' material allegations, and denying that it committed any violations of federal or state law. (ECF No. 5).

In February 2020, the Parties conferred regarding the claims and defenses. Defendant provided Plaintiffs with factual defenses to the claims, and further asserted that the claims should be subject to an arbitration agreement. Plaintiffs responded with evidence in support of their claims, and argued that the arbitration agreement would not be enforceable. As a result of these

early discussions, the Parties agreed to discuss early resolution before engaging in protracted litigation of the matters in dispute. (Lalak Decl. at ¶ 12). To that end, on February 26, 2020, the Parties filed a Joint Motion to Stay Proceedings Pending Mediation. (ECF No. 11). The Court granted the Joint Motion. (ECF No. 13). While this matter was stayed, the Parties engaged in informal discovery, producing documents relevant to the disputed claims and defenses. (Lalak Decl. at ¶ 14). In addition, Defendant produced detailed payroll information for its current and former hourly non-exempt employees who were subject to Defendant's automatic meal deduction policy between November 23, 2016 through April 2020 (the "Covered Period"). (*Id.* at ¶ 14).

The pre-mediation payroll information provided by Defendant comprised a total of 206,436 lines of payroll information and punch data. (*Id.* at ¶ 15). Upon receiving that information, Plaintiffs' counsel, in conjunction with an economist who Plaintiffs' counsel engaged as a consultant, analyzed the information to create a damages model. (*Id.*). The analysis revealed that a total of 345 current and former employees of Defendant who may have been subject to improper overtime payments (the "Potential Opt-In Plaintiffs"). (*Id.*).

In addition to calculating the potential damages for Plaintiffs' and the Potential Opt-In Plaintiffs, Plaintiffs' Counsel performed an expected valuation analysis of such damages, determining a fair settlement value in light of the uncertainties inherent to litigation. (*Id.* at ¶¶ 23-24).

The Parties successfully mediated this case on June 10, 2020, with highly respected mediator Frank A. Ray. *See* qualifications of Mediator Frank A. Ray, at https://www.frankraylaw.com/attorney/. (Lalak Decl. at ¶ 17). Through their discussions with Mr. Ray, the Parties reached an agreement for Defendant to establish a common fund with a

3

maximum settlement amount of $171,000.00 for the benefit of Plaintiffs and the Potential Opt-In Plaintiffs, to be distributed as follows:

- To Qualified Claimants (who are the Representative Plaintiffs and the Potential Opt-In Plaintiffs who timely submit completed claim forms), shares of the Revised Gross Fund pursuant to an agreed upon allocation formula reflecting the amount of unpaid overtime each Qualified Claimant has in the Covered Period;

- To Representative Plaintiffs, a service payment of $1,000 each to compensate them for their time and participation in representing the Potential Opt-In Plaintiffs in bringing the claims, participating in the investigation and discovery process, and providing input in connection with the mediation; and

- To Plaintiffs' Counsel, one third of the Gross Fund for attorneys' fees, including those in connection with securing this Settlement, the claims process, and implementing this Settlement Agreement; and an additional amount for reimbursement of their reasonable costs and litigation expenses incurred in the amount of $5,000.33.

(Lalak Decl. at ¶ 18; *see also* Settlement Agreement).

Pursuant to the formula created in the Settlement Agreement, Qualified Claimants will receive a payment representing the overtime accrued if 29% of all unpaid lunches were actually worked. (Lalak Decl. at ¶ 21). The Parties now seek this Court's approval of this Settlement and certification of a collective under the FLSA for settlement purposes only; approval of a service payment to Named Plaintiffs; approval of Plaintiffs' Counsel's request for attorneys' fees, costs, and expenses; and authorization to send the proposed notices to Potential Opt-In Plaintiffs.

## MEMORANDUM OF LAW

A. **The Settlement is Fair and Reasonable.**

Section 216(b) of the FLSA authorizes employees to bring an action on behalf of themselves and others similarly situated to recover unpaid minimum wages, unpaid overtime compensation, and an additional equal amount as liquidated damages. The Parties agree, for the

4

purposes of settlement only, that Plaintiffs' claims are representative of the Potential Opt-in Plaintiffs and shall include those individuals who worked for Defendant as non-exempt employees during the Covered Period and who meet the other inclusion requirements described above.

Settling parties routinely seek judicial approval of a proposed Settlement to ensure fairness and to give effect to the FLSA releases. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353, 1355 (11th Cir. 1982) (approving FLSA settlement). Courts consider whether a bona fide dispute exists and whether the settlement, as well as the distribution of the settlement proceeds to opt-in plaintiffs, service awards, and attorneys' fees and costs are fair and reasonable. *See Dillworth v. Case Farm Processing, Inc.*, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010). The law favors compromise and settlement of class and collective action lawsuits. *See Swiggart v. Fifth Third Bank*, 2014 U.S. Dist. LEXIS 94450, * 11 (S.D. Ohio July 11, 2014).

Based upon Plaintiffs' Counsel's expertise and experience, the settlement is fair, just, and adequate to settle the claims of Plaintiffs and the Potential Opt-In Plaintiffs. (Lalak Decl. ¶¶ 18-26). While Plaintiffs believe the allegations asserted in the action have merit and are supported by the information developed to date, Defendant has asserted that there are legitimate defenses to liability in this action and Plaintiffs' Counsel recognizes the expense and delay which would be incurred as the result of the proceedings necessary to prosecute the action against Defendant through trial and appeal. (*Id.* at ¶¶ 25-26). Moreover, Defendant has asserted a competing damages analysis, arguing that even if Plaintiffs prevailed in this action, the actual damages to Plaintiffs and the Potential Opt-In Plaintiffs would be far less than the amount agreed upon at mediation. (*Id.* at ¶ 24).

In reaching the Settlement, both parties carefully considered the uncertain outcome and risk of any litigation. In calculating a fair settlement amount, Plaintiffs' counsel calculated the mathematical expected value of the case through trial using TreeAge Pro©, which is a decision tree software. (*Id.* at ¶ 23). Specifically, Plaintiffs' counsel assigned subjective probability values to each stage of the litigation (e.g., conditional certification, Rule 23 class certification, decertification, summary judgment, trial, establishing willfulness, establishing entitlement to liquidated damages in various amounts etc.). (*Id.*). Each of these risk probabilities were then compounded and multiplied by the damages calculated by Plaintiffs' counsel's damages consultant who is a Ph. D.-educated economist. (*Id.* at ¶¶ 14,23,24).

By utilizing this process, Plaintiffs' counsel believes they were able to more fully appreciate the complete risk picture and economic value of the case, rather than simply relying on intuition and experience. (*Id.* at ¶ 23). Plaintiffs' expected value analysis reveals that the settlement is favorable to Plaintiffs and the Potential Opt-In Plaintiffs. (*Id.*). Plaintiffs' counsel believes that this fact confirms their experiential opinion that the proposed settlement is fair, adequate, and reasonable. (*Id.*).

**B.     Representative Plaintiffs' Service Awards are Proper and Reasonable.**

The requested service awards to Representative Plaintiffs recognizing the value of their services on behalf of other participants are proper. As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.

6

130 F.R.D. at 373 (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666 F. Supp. 750, 752 (D. Md. 1987)).

Service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997). The courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)). *See also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

Named Plaintiffs contributed significant time and effort towards the achievement of this resolution. (Lalak Decl. at ¶ 31). Further, they provided detailed factual information that was critical in enabling the Parties to successfully resolve this matter. (*Id.*). Named Plaintiffs' time and efforts achieved a class-wide resolution, and support the requested service payment. (*Id.*).

        **C.    The Attorneys' Fees and Expenses to Plaintiffs' Counsel are Proper and Reasonable.**

After the Court has confirmed that the terms of settlement are fair to Plaintiffs and the Potential Opt-In Plaintiffs, it may review the Parties' agreement as to the provision of fees and costs to Plaintiffs' Counsel. The Settlement reflects Defendant's agreement to pay Plaintiffs' Counsel an amount for attorneys' fees equivalent to one-third of the Gross Fund and an additional amount for reimbursement of their reasonable costs and litigation expenses.

7

Plaintiffs' Counsel's litigation expenses are $5,000.33. (Lalak Decl. at ¶ 32). All of the expenses were incurred in the course of this action for the purpose of preserving, proving, and presenting the claims of the Representative Plaintiffs and the Potential Opt-In Plaintiffs. These expenses include filing fees, costs incurred by Plaintiffs' counsel through engaging an economist, costs incurred associated with the mediation, and Plaintiffs' share of mediator's fees.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). The FLSA's mandatory fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)).

The percentage award agreed upon in the present case satisfies the Sixth Circuit's standard for common fund settlements. While the district court has the discretion to base attorneys' fees on the lodestar method, "the trend in the Sixth Circuit is toward adoption of a percentage of the fund method in common fund cases." *In re Southeastern Milk Antitrust Litig.*, 2013 U.S. Dist. LEXIS 70167, at * 13 (E.D. Tenn. 2013); *In re Telectronics Pacing Sys., Inc.*, 186 F.R.D. 459, 483 (S.D. Ohio 1999). The district court "must make sure that [class] counsel is fairly compensated for the amount of work done as well as for the results achieved" and "the percentage of the fund method more accurately reflects the results achieved." *Rawlings v. Prudential Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). The percentage approach "provides a fair and equitable means of determining attorney's fees'" because "'the size of a common fund

8

is an objective yardstick by which the benefit conferred upon the class can be measured.'" *In re Revco Securities Litigation*, Fed. Sec. L. Rptr. ¶ 96,956, at 94,069 (N.D. Ohio 1993).

A one-third fee request has been approved in numerous collective and class actions in the Northern District of Ohio. *Benton v. M.K. Morse Company*, Northern District of Ohio Case No. 5: 19-CV-00933 (Adams, J.); *Braucher, et al. v. Atlas Railroad Construction, LLC.*, Northern District of Ohio Case No. 5:14-cv-01601 (1/3 fee approved in case where parties agreed to early mediation without motion practice and formal discovery); *Mulloy, et al. v. Cuyahoga County*, Northern District of Ohio, Case No. 1:14-cv-02546 (same); *see, also., Terry v. All Hearts Home Health Care,* Northern District of Ohio Case No. 1:16-cv-515; *Houston, et. al. v. Progressive Casualty Insurance Co.,* Northern District of Ohio Case No. 1:15-cv-01853; *Rucker v. Quality Blow Molding,* Northern District of Ohio Case No. 1:15-cv-1039; *Douglas, et al. v. J&K Subway, Inc.,* Northern District of Ohio Case No. 4:14-cv-2621; *Smith v. CMHA*, Northern District of Ohio Case No. 1:14-cv-1409; *Armbruster v. City of Cleveland*, Northern District of Ohio Case No. 1:13-cv-2626; *Williams v. Beckett Air, Inc.*, Northern District of Ohio Case No. 1:12-cv-2796; *Welch v. Incept Corporation*, Northern District of Ohio Case No. 5:12-cv-1775; *Malaj v. Gohlke*, Northern District of Ohio Case No. 1:11-cv-1578; *Campbell v. Judson Services*, Northern District of Ohio, Case No. 1:11-cv-906; *Murphy v. 1-800-Flowers*, Northern District of Ohio, Case No. 1:10-cv-1822; *Miller v. National Enterprise Systems*, Northern District of Ohio, Case No. 1:10-cv-1664; *Osolin v. Turocy & Watson LLP, et al,* Northern District of Ohio, Case No. 1:09-cv-2935; *Kelly v. National Enterprise Systems*, Northern District of Ohio, Case No. 1:09-cv-2268; *McNelley v. Aldi,* Northern District of Ohio, Case No. 1:09-cv-1868; *Rotuna v. West Customer Management Group,* Northern District of Ohio, Case No. 4:09-cv-1608; *Jackson v. Papa John's*, Northern District of Ohio, Case No. 1:08-cv-2791; *Dillworth v. Case Farms*,

9

Northern District of Ohio, Case No. 5:08-cv-1694; *Fincham v. Nestlé Prepared Foods Company*, Northern District of Ohio, Case No. 1:08-cv-73; and *McGhee v. Allied Waste Industries*, Northern District of Ohio, Case No. 1:07-cv-1110; *Lackie v. U.S. Well Services, LLC.*, Northern District of Ohio, Case No. 2:15-cv-00695.

Plaintiffs' counsel asserts that the requested attorneys' fees and costs are reasonable in light of the fact that the Settlement was obtained after extensive investigation and analysis. Defendant does not contest Plaintiffs' counsel's request for attorneys' fees and costs in the amounts provided by the Settlement Agreement. Moreover, the efficient resolution of this case, without the necessity for prolonged litigation, was a direct result of Plaintiffs' counsel's factual and risk analysis, experience in handling complex litigation, and extensive knowledge of wage and hour law. (*See* Lalak Decl. ¶¶ 4-7, 22-28). In order to make this resolution possible, Plaintiffs' counsel agreed to advance the expenses and costs of litigation, discovery, and mediation for the benefit of Plaintiffs and the Potential Opt-In Plaintiffs. (*Id.* at ¶ 22). It is appropriate that the Court approve the reimbursement of these necessary expenses and costs to Plaintiffs' Counsel from the common fund pursuant to the terms of the Settlement Agreement.

## **NOTICE OF OPPORTUNITY TO PARTICIPATE IN SETTLEMENT**

To facilitate this Settlement, this Court should authorize the Parties to mail the proposed Notice and Consent to Join Forms to the Potential Opt-In Plaintiffs informing them of their opportunity to participate. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 168-69 (1989). A copy of the Proposed Notice and Consent to Join and Release Form is attached the Settlement Agreement as Exhibit 1. The notice procedures provided under Section 216(b) permit potential plaintiffs to participate in the settlement by filing a completed consent to join form, while providing that those who do not elect to do so will not be bound by the settlement. Notably, the

Proposed Notice and Consent to Join and Release Form is nearly identical to that approved by this Court in *Smith, et al. v. CHS Employment Services, LLC*, S.D. Ohio Case No. 2: 17-cv-01077-JLG-EPD (Graham J.) (*See* Notice at Doc. No. 72-1; at Pages 12-14 of 52; *see also* This Court's Order approving same at Doc. No. 73).

## CONCLUSION

The Parties jointly submit this Settlement as a fair and reasonable resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action. Accordingly, the Parties request that this Court enter the Proposed Order and Judgment Entry Approving Settlement of Collective Action and Dismissing Action with Prejudice, and thus (1) approve the Parties' Settlement Agreement; (2) certify the case as a collective action for settlement purposes only; (3) approve Plaintiffs' Counsel's request for attorneys' fees, costs, and expenses; (4) authorize notice to the employees identified in Exhibit 1 to the Settlement Agreement and Release; (5) approve Named Plaintiffs' service awards; and (6) retain jurisdiction to enforce the Settlement.


Respectfully Submitted:

| | |
|---|---|
| */s/Christopher J. Lalak* | */s/ Michael B. Mattingly* |
| Christopher J. Lalak | Michael B. Mattingly |
| NILGES DRAHER LLC | DINSMORE & SHOHL LLP |
| 614 West Superior Ave, Suite 1148 | 255 E. Fifth Street, Suite 1900 |
| Cleveland, OH 44113 | Cincinnati, OH 45202 |
| T: 216-230-2955 | T: (513) 977-8200 |
| F: 330-754-1430 | F: (513) 977-8141 |
| E: clalak@ohlaborlaw.com | E: michael.mattingly@dinsmore.com |
| *Attorney for Plaintiffs* | *Attorney for Defendant* |

## **CERTIFICATE OF SERVICE**

    I hereby certify that on July 20, 2020 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all registered CM/ECF participants.

                                              */s/Christopher J. Lalak*
                                              Christopher J. Lalak